We will hear argument first this morning in Case 25-6, Keithley v. Buddy Ayers Construction. Mr. Garr? Thank you, Mr. Chief Justice, and may it please the Court. Judicial estoppel prevents a party from deliberately adopting inconsistent positions to gain an unfair advantage in litigation. Because the doctrine targets intentional inconsistencies, courts have resisted its application when a party's prior position is based on inadvertence or mistake. The narrow but important question in this case is how to determine when a party's position was inadvertent or intentional in the specific context where a debtor fails to update a form to reflect a new cause of action outside of bankruptcy. If the failure to update the form was simply a mistake, then there is no intentional inconsistency and no basis to invoke judicial estoppel. The Fifth Circuit applies what amounts to a conclusive presumption that a debtor's failure to disclose a cause of action through updating a form is intentional, as long as the debtor knew of the facts underlying the claim and had a potential financial motive to shield the asset, something which exists almost by definition in the case of any bankruptcy. That rule flouts the flexibility that equity ordinarily demands, it grants a windfall to alleged wrongdoers who have no connection to the bankruptcy, and it unfairly penalizes honest debtors by denying them redress for real wrongs. This Court should reject the Fifth Circuit's rule and hold, instead, that courts must undertake a holistic analysis of all facts bearing on a debtor's intent before concluding that a debtor's failure to update a form represents an intentional position that no cause of action exists. Erasing a debtor's claim seeking redress for tortious or other illegal conduct, like petitioner's personal injury action here, imposes an enormous cost on individuals already facing hard times. There is no basis for taking that extreme step based on a conclusive presumption that may be entirely unfounded. I welcome the Court's questions. Mr. Garr, what type of evidence should be used in your holistic approach? So we would look to all surrounding circumstances, Your Honor, objective and subjective. It would include the debtor's own testimony, typically, but that would just be one factor. You would look at the sophistication of the debtor, when and the manner in which the debtor updated the form, whether the debtor told his attorney of the cause of action, whether creditors objected when a form was amended, the impact on creditors or others in the bankruptcy, the bankruptcy court's own findings. These are objective factors that courts have looked to and can be applied in determining a debtor's actual intent. One factor you haven't mentioned is, of course, the impact on the judiciary, the judicial reputation, sort of phrases that have traditionally been used here. All that you've been talking about is between the two parties to the bankruptcy and the accident. Where does that factor in? I thought that was the primary basis for the whole doctrine of judicial estoppel. You don't want to put the courts in the position of acting on the basis of a counterfactual that's not true. Absolutely, Your Honor. That's the backbone of judicial estoppel. This Court and others have talked about playing fast and loose with the courts and protecting the integrity of the courts. And what this Court recognized in New Hampshire is that where the integrity is impacted is where parties intentionally advance inconsistent positions in order to gain advantage in litigation. And to put the courts in the position of potentially adopting those inconsistent positions is what undermines the integrity of the courts. I thought it was more that they proceeded on the basis of a particular assumption, but what was shown, and you don't want to put them in a position of having two different versions of reality and then proceeding on the basis of one or the other. So I think what the courts have described it as is the cold manipulation of the process, Your Honor. And that happens when an individual intentionally takes one position, secures an advantage by the adoption of that position, turns around in a different proceeding, adopts a different position and tries to get a different advantage. If the individual didn't intentionally adopt that first position and corrects it, as happens in the scenario here where a debtor is simply unaware, and as the amici former bankruptcy judges indicate, bankruptcy forms are very confusing even with the aid of counsel. Many debtors simply just don't realize that the cause of action is an asset and forms have to be updated. In that situation, the debtor has made simply a mistake in failing to update the court into existence of the cause of action. And there, the debtor is not actually taking the position that there is no cause of action before the bankruptcy court. He simply failed because of his mistake to update a form. So there is no intentional inconsistency. There's no playing fast and loose with the courts. There's no cold manipulation of judicial process. And there's no threat to the integrity of the court. And conversely, judicial estoppel is an extreme measure, and it's appropriate where there is a threat to the integrity of the court, but it involves wiping out a cause of action. And here you have a situation in which courts, without even engaging in a holistic determination as to the debtor's actual intent, whether the debtor simply made a mistake in failing to update a form or wiping out a cause of action like Mr. Keithley's personal injury action, here, the respondent's own driver admitted that his brakes failed and that his truck hit Mr. Keithley's, and that action has been wiped out based on a conclusive presumption that the Fifth Circuit applies, that simply because a debtor has a potential financial motive to mislead, a debtor's failure to update the bankruptcy court as to the existence of a cause of action is an intentional representation. Ms. Taggart, can I interrupt you and ask you a question? This is an eerie question. This is a diversity suit, so why does the federal law, everyone's assumed that the Fifth Circuit's law of judicial estoppel applies. Is the Mississippi law different? And if not, why doesn't the Mississippi law control in the diversity suit under Erie? So I think as I understand this court's decision in Hampshire versus Maine, I mean, the judicial estoppel doctrine as embraced by this court is, you know, a federal common law-type rule inherent in the court's own authority to protect its proceedings. And so I think that that would be a federal baseline. I mean, state courts have applied it as well. I think here no one has pointed to any difference in the proceedings. I gather that it's a matter of some dispute in other circuits, that courts have struggled with that question. And I don't want to resolve it here, and I don't think we have to resolve it here, but I certainly wouldn't want anything we've said here to resolve that question. I mean, I can see arguments on either side. I think what you're saying might be kind of a bird versus Blue Ridge, the overriding federal interest overcomes whatever we might say about the outcome-determinative prong of Erie. It just seems to me like that might be something I just wanted to know your reaction about it, because it might be something to avoid. So I think the court can and absolutely should reserve that question for a later day. Your Honor, I'm not aware of any inconsistency in state or federal courts in terms of recognizing that judicial estoppel doctrine wouldn't apply in the case of an honest mistake. I think courts across the board have focused on what they call the cold manipulation of the courts and the judicial process. Okay. Just one last question, then, speaking of just questions to avoid. Do you see your argument as really kind of confined to how judicial estoppel plays out in the bankruptcy context in particular? Yes. Okay. Why? Well, that's the situation, and this has arisen. I mean, it's unique in the important respect is typically when a judicial estoppel has applied in another context, like New Hampshire versus Maine, you have a party that's affirmatively adopted two different positions, and there's no question what the party thinks its position is. Here in the bankruptcy context where a debtor has failed to update a form, the position is implied by the failure to update the form, but the debtor hasn't actually affirmably said, I have no cause of action. Where judicial estoppel is invoked, there's a presumption in the Fifth Circuit that the debtor, in fact, made that representation. So the context is different in important ways. In New Hampshire, this court, in outlining general principles that typically apply, recognized that additional considerations would be appropriate in specific factual contexts. So I think the context here is important. Also, in this context, you have individuals who, you know, very often are not particularly sophisticated. You have an environment, bankruptcy, where forms are complex. Again, I mean, the unique former bankruptcy judges here and themselves have talked about the complexity of the forms. They're confusing, even with the aid of counsel. And so I think that's a situation in particular, this context, where one would be wary about there was any position at all or whether a debtor simply made an honest mistake in failing to update a form. Mr. Garr, I've been having trouble trying to fit in our New Hampshire principle to the bankruptcy context, where the bankruptcy has not terminated. Meaning, in a situation like this one, where the bankruptcy is still ongoing, because logically and otherwise, it should be the bankruptcy court that decides whether to impose a penalty. Because doing away with the personal injury suit deprives the creditors of a potential source of income for the bankruptcy. In an ongoing bankruptcy, that's a draconian effect on the creditors that the second court would be imposing. So I'm not sure how equitable estoppel really can play out on the principles set forth in New Hampshire. New Hampshire said that the first court had to be persuaded to accept that party's earlier position. But here, with the amendment, there was no permanent acceptance of a position by the bankruptcy court. It also, as New Hampshire said, a court has to consider whether the party seeking to assert an inconsistent position derived an unfair advantage or imposed an unfair detriment on the opposing party. But the opposing party here, there's no unfair detriment to the man who hit your client with a truck because he wasn't involved in the bankruptcy. And the unfair advantage was wiped away once the disclosure was made in the bankruptcy court. So I'm a little bit perplexed when I started with this, how we deal with that context in this special situation where the bankruptcy has not terminated. There's been no final determination that the bankruptcy court was misled in a way that caused detriment to the bankruptcy process, to its creditors, or to anyone. So I'm not going to quarrel with anything that would lead to the conclusion that judicial estoppel doesn't wipe out my client's claim, Your Honor. No, no, no. What I would say, though, is... Maybe this is a question for the other side. But I've been having a hard time understanding how this theory works in a situation in which it's different parties and not the same parties being misled. So in New Hampshire, the court did reference the possibility that either the first court or the second would be misled, and I think that's probably the theory that courts have applied here. I think what Your Honor's question underscores, though, is that here, the bankruptcy court, you have a proceeding ongoing. The bankruptcy court is well-equipped to take any action it determines is appropriate to protect other creditors. Other creditors can stand up as well to sanction conduct that it believes is misleading or deceitful. And so there's not the need for a sort of overarching judicial estoppel check here. And that makes it all the more egregious, frankly, for the Fifth Circuit to simply disregard all that and adopt this conclusive presumption that a debtor is acting with an intent to adopt a position that no cause of action exists and to mislead the courts. Mr. Garrett, can I ask you, because I'm trying to ascertain your position with respect to what suffices for establishing an inadvertence or mistake. You've talked about intentional omissions as they relate to misleading the courts, but you can imagine a world, I think, in which the debtor might have an intent to omit, perhaps to mislead someone else. So, you know, a debtor who's, say, contemplating a divorce, they leave off the claim because they want to have less exposure in the case if they decide to go through with the divorce. So it's intentional, but not with the point of misleading the court. How would you say that should be taken into account or should it in regard to figuring out whether there was an inadvertence or mistake? So, Justice Jackson, I think, first of all, that the key is that the court has to determine that the debtor has made an intentional, adopted an intentional position that no cause of action exists. I think that the heartland in which judicial estoppel is invoked, the understanding is that the debtor is trying to mislead the court to gain advantage. And you're hypothetical. I don't think that that would invoke the heartland of judicial estoppel. Nevertheless, I think judicial estoppel being an equitable doctrine, considering the additional factors, that could be part of a mix. I'll take it into account in terms of your holistic view. And so your argument here is that the Fifth Circuit's test is too rigid because it doesn't allow for full consideration of intent or other factors that could bear on inadvertence or mistake. That's exactly right. I mean, our position is that the inquiry into the debtor's intent here as to whether they intentionally adopted a position that no cause of action exists should be undertaken. But does it matter that their motive is different? I mean, so in my hypothetical, they did intend. They intended to omit. So it's not inadvertent or mistaken. What then? So I think that's a good example where, you know, really the bankruptcy judge is in charge of his or her proceedings and can take appropriate action. In that situation, no doubt the judge would think it's improper and perhaps warrant sanction that the debtor is attempting to hide his assets from his spouse or others, and so sanctions might be warranted. I don't think that that's the typical fact pattern which judicial estoppels warranted, but I think what distinguishes this case is there's just no determination that the debtor here actually intended to hide anything from the court. Mr. Garre, on that, just to follow up on it, why is intent to mislead the court essential? You know, I struggle to find that in New Hampshire. There are gestures in that direction, but couldn't sometimes a knowingly misleading the court plus other factors in equity be enough? Yes. If that's true, then intent isn't essential. It's just one factor in your view. So I agree it's one factor, but the intent that matters, Your Honor, is the intent to adopt inconsistent positions. No, I get that, but not necessarily an intent to mislead the court. Right. I mean, there's a lot of language in the cases about cold manipulation of the courts playing fast and loose, but really what I think the court is driving at is intentionally adopting inconsistent positions, and what's different about this case is there's been no actual determination that the debtor here intentionally adopted the position that there's no cause for action. Thank you, counsel. Justice Thomas? Justice Alito? Well, excuse me, I'm a little confused by those answers. So what is required is knowledge of the fact that inconsistent positions are being taken. So I think, Justice Alito, it's the fact that the debtor has taken intentionally inconsistent positions. So in the bankruptcy context, by failing to update the form, a determination would be made that the debtor, in fact, intended to adopt the position that no cause of action exists as opposed to simply making a mistake in failing to update a form. And when the debtor then goes to a separate court and advances this cause of action, he's taking the separate position that the cause of action exists, and that would be intentionally inconsistent. But that intentionally inconsistency doesn't arise where a debtor simply makes a mistake in failing to update a form. In that situation, the debtor isn't adopting any position that he has no cause of action. He's simply making an honest mistake. I'm not sure I understand the distinction in this context, but I'll leave it at that. Does the record show why the bankruptcy attorney did not list this as an asset? It doesn't, Your Honor. The bankruptcy attorney did in his sworn declaration in the record here say that my client informed him of it, but it doesn't explain why he didn't advise the court. I mean, that's something that potentially could come out in a holistic inquiry. But I think here what matters is the debtor's intent in terms of whether or not the debtor was attempting to hide it. Well, do you think that the client in a judicial estoppel situation is to any degree responsible for the actions of the attorney? I don't. Certainly not in the normal sense that the court ordinarily would apply the client responsible, Your Honor, because the key here is the debtor's own intent in terms of whether the debtor was trying to hide anything because it's the debtor who's going to a different court and asserting his cause of action. And so I think that that's a factor, and I think, frankly, the fact that the debtor here told his attorney promptly after the accident is a factor that cuts in his favor, that he wasn't trying to hide anything from the bankruptcy court, and there are many other factors that go to that. But what we really want is an opportunity for a holistic analysis that under the Fifth Circuit's rule we never got. Would you disagree with the proposition that where there is a duty to disclose and a potential financial interest and the person who has that duty has a financial interest in not disclosing, that creates a pretty strong presumption of the requisite intent or knowledge? Not in this context, Your Honor. No? Because here, again, the brief by the amici former bankruptcy judges themselves piggybacking on the American bankruptcy to see its own findings emphasize that these forms are confusing, hard to follow, even with the aid of attorneys. So I think in this context, where you're dealing with, by and large, relatively unsophisticated people who lack legal training or the like, all of that factors into the judicial estoppel analysis here. There are factors here that seem perhaps confined to the bankruptcy situation and to the way in which proceedings are often conducted in bankruptcy court, which I think are not always a form in which scrupulous, very meticulous compliance with all the rules apply. But I don't quite understand why the bankruptcy attorney didn't disclose. I don't quite understand why. The creditors here had no interest, apparently, in having this as an asset of the estate. Can you explain what's going on? Is it just because this is Chapter 13 and it's just handled in a rather informal way? So, Your Honor, I mean, that's part of it. I mean, here the creditors were paid 100 percent on the plan and ultimately were paid off. And if any creditor had any concern about the payments on the plan or how this asset would have affected the estate, they could have taken action in the nearly one year between the time when Mr. Keithley advised the court of the cause of action and before his bankruptcy was completed. And all of that would be part of the mix here, the fact that no creditors even complained. There's a debate in the law as to whether or not there was any interest available here. I mean, again, as the amici former bankruptcy judges explained, we don't think interest was available here, so the creditors were getting and did get everything they were entitled to in the bankruptcy. Thank you. Justice Sotomayor? I don't know how much this loss, personal injury lawsuit would garner, but the choice for the creditors was an unknown sum of recovery, some of which would have been paid to medical injuries and to supplement lost income versus the security of having full payment, correct? That's correct, Your Honor. And having the bankruptcy last forever without full payment. That's correct. And creditors are uniquely situated to protect their own interests. If they thought anything wrong had happened or there was a mistake in the cause of action, they would have acted here. No creditor objected. Thank you. Justice Kagan? Mr. Garre, your brief speaks often of bad faith, of whether the debtor had bad faith in making these inconsistent representations. Are you equating that? You haven't spoken of it very much today. Are you equating it with the kind of intent that you have been talking about? Yes. I mean, the courts refer to bad faith here in cases from here and there. I mean, we're not suggesting that this is an inquiry into whether there was an intent to defraud the court or anything like that. I think what the doctrine looks to is the intentional inconsistency, and where a litigant makes an intentional inconsistency to gain an unfair advantage through the courts, this court recognized in New Hampshire that that undermines the integrity of the court and that that is sort of consistent with an intent to mislead the court often, but we're not suggesting that a finding of actual bad faith is necessary or part of the analysis. But are you suggesting that this finding of intentional misrepresentation is necessary? This goes to Justice Gorsuch's question again and also to the Chief Justices when he opened, that he said, you know, in the end, judicial estoppel is about the integrity of the courts, and aren't there circumstances in which even though you couldn't find that kind of intentionality on the part of the debtor or the part of somebody else making the representations, still the integrity of the courts is on the line? So I don't think the court has to rule that out. I mean, I think the courts, you know, just as frequently talk about how judicial estoppel doesn't apply in the case of inadvertence or mistake, and we think in that situation where a party, because of a mistake, hasn't intentionally adopted a particular position, that there is not the same kind of threat to the judiciary. But this Court doesn't need to say here that judicial estoppel is never appropriate in any situation in which a party makes a mistake. I mean, we think it's an important factor. The Court recognized it in New Hampshire. Other courts have universally recognized it, and it's particularly important and applicable in this unique context. Thank you. Justice Gorsuch. Very briefly, Mr. Garr. I take your point that you don't need to have an intention to mislead the court. You say, though, an intention to pursue inconsistent positions is required. I just don't see that in New Hampshire either. I see you have to take inconsistent positions, but I'm not sure I see that you have to intentionally do so. Am I missing something there? So I think in New Hampshire on page 750, it talked about prohibiting parties from deliberately changing positions according to the exigencies. I mean, the Court cited lower court cases like Scarano, which talked about — It does cite lower court cases, but when it actually lists the factors, it just says inconsistent positions and deriving an unfair advantage from them on page 750. But then I think that — I'm sorry, Your Honor. No, go ahead, please. But then I think in the Court later, in applying the factors, says that courts have resisted application in the instance of mistake. Yes, inadvertence and mistake. That we know to be true. That New Hampshire definitely does say. Right. And I guess that leads me to this. Judicial estoppel is kind of an off-branch of equitable estoppel and is a relatively new invention dating to, well, new. It dates to the mid-19th century. For law, I guess that's new sometimes. And we have exactly one opinion on the subject, New Hampshire. That's it. We haven't developed a law very much yet. And I wonder whether you would be content with the following ruling, and if not, why not? We've said inadvertence and mistake is not a basis for judicial estoppel. The Fifth Circuit glossed that rule with one of its own, a bright-line rule, that it's never inadvertence and mistake when there's a knowing omission and there's a motive. Would it be enough to simply say, we don't need a further gloss on inadvertence and mistake, this is an equitable doctrine, go back and do it again, looking at what we've said? So that would be an improvement, Your Honor, but I think that what the court needs, what the Fifth Circuit needs guidance on is that you really have to take this holistic analysis in terms of whether or not there was a mistake. Yes, no, I'm giving you that. Right. I'm just simply saying their bright-line rule on what does and does not qualify as inadvertence and mistake is not what we said in New Hampshire. Go back and try again. Maybe applying state law, maybe taking cognizance of the bankruptcy context, all these kinds of additional concerns, but a very short and succinct opinion saying, look at New Hampshire. So I think that that would be fine. Obviously, the devil is in the details, Your Honor, but I think what's critical there is that the upshot would be that, in this instance, if the courts conclude that a debtor's failure to update the form was simply an honest mistake, that it generally would be inappropriate to apply judicial estoppel. It's inadvertent or mistaken. Yes. Okay. Honest mistake. Okay, thank you. Mr. Kavanaugh? Is there any difference between a knowing inconsistency and an intentional inconsistency? I'm not sure about your answer to that. I don't think so, Your Honor. The point that's critical here is that the court has to determine that when the debtor failed to update his form, he was knowingly or intentionally adopting the position that no cause of action exists. So no daylight, just making sure. Well, I mean, look, in the law, there probably is a difference. Well, in this context, is there any daylight between a knowing inconsistency and an intentional inconsistency as you see it? As a practical matter, I don't think there is. I will say that the courts have talked about intentional inconsistency. I mean, that's the language this Court piggybacked on. Well, I think that creates confusion, as Justice Gorsuch was talking about. So, I mean, I think the intent language is well taken. I mean, if this Court believes that the knowing language is more suited to the doctrine, I mean, I think that would lead to the same conclusion here, and that's what we're up here fighting for. Thank you. Thank you. Justice Barrett? Justice Jackson? So I'm noting that New Hampshire wasn't a bankruptcy case, and I'm thinking that maybe judicial estoppel is sort of a poor fit for this context because even if there is an intentional omission, however we define that, the bankruptcy court has many, many tools, I think, this is sort of what Justice Sotomayor was alluding to, to solve that problem when it comes to its attention and to prevent the estate from getting this additional asset seems to harm the creditors in ways that I don't think are consistent with the way we understand bankruptcy. So, I mean, in addition to Justice Gorsuch's solution, I suppose one thing could be to think about whether judicial estoppel is really the right remedy here. So, again, I'm not going to quarrel with anything that results in a conclusion that judicial estoppel doesn't apply. What I think is important here is what the bankruptcy court has control of these proceedings and its actions or inactions should be an important factor in determining whether or not judicial estoppel is. Do you know if there's ever a world in which, is it after the bankruptcy closes if this information comes to the bankruptcy court's attention? Is there nothing that can be done at that point? So it can be reopened. It can be reopened. There's always an opportunity to take advantage of. Right. And I'm not going to make my friend's argument. What I would say, though, is I think that the courts have assumed judicial estoppel has applied here because on the theory that the second court is being duped, so to speak, in the sense that there's inconsistent positions and so it's a threat to the second court. But I think Your Honor's point is exactly right that the bankruptcy context is unique and that there's an important role for the bankruptcy courts. And the second court's proceedings are sort of completely independent, right? And they're arising out of facts that have nothing to do with the bankruptcy. Exactly. And that underscores the windfall that the defendant is getting. The defendant in the second proceeding has no connection to the bankruptcy, and yet the defendant walks away scot-free. Thank you. And that's not equitable in any sense. Thank you, Counsel. Thank you, Your Honor. Mr. Liu? Thank you, Mr. Chief Justice, and may it please the Court. Oops, I spilled the water. That's a first. Judicial estoppel should apply only if the balance of equity supports it. In New Hampshire v. Maine, this Court described factors relevant to that balance. Those factors include whether a party derived an unfair advantage from the prior position, whether that position was the product of inadvertence, and whether judicial estoppel is consistent with broader public interests. Here, the Fifth Circuit made two errors. One is the error Petitioner has focused on this morning. The Fifth Circuit reduced inadvertence to just two considerations, thereby failing to consider the totality of the relevant evidence, including evidence that Petitioner reasonably believed that he had no duty to disclose his tort claim while a damages award was still a long ways off. But the other error is, in our view, even more fundamental. The Fifth Circuit effectively reduced the entire balance of equities to a single factor, inadvertence, thereby ignoring the interests of innocent creditors and the bankruptcy court's ability to undo any unfair advantage. Therefore, the decision below should be vacated and the case remanded. I welcome the Court's questions. Mr. Liu, I'd like you to take a step back to New Hampshire. New Hampshire was quite a different case from this. New Hampshire involved litigation between Maine and New Hampshire over the boundaries. In two earlier cases, New Hampshire had accepted that the middle of the river was the boundary, and in the subsequent litigation, it changed and argued that the boundary was to the Maine shore. And what the Court said, in Justice Ginsburg's opinion, was that you could not, to your advantage, change positions like that, and hence judicial estoppel. How does that fact pattern allow us to decide this case based on New Hampshire? Well, you're right that the specific context of New Hampshire is far different from a bankruptcy case, whereas some justices have already mentioned that the two proceedings, the bankruptcy case— Well, I'm not as interested in the bankruptcy case. I'm interested in the fact that the litigation was between the same parties, between New Hampshire and Maine. Here, you do not have that mutuality. That's right, and I think what this points up is that for judicial estoppel to apply, the balance of equities has to support it. And in New Hampshire v. Maine, I think it was important to the balance of equities that you had two co-equal sovereigns that had been involved in the same litigation many years prior. That's part of the balance of equities. Our submission here is a court shouldn't blind itself to the balance of equities in this context either. I think what New Hampshire v. Maine teaches is there are two kind of essential elements of judicial estoppel. Those are the first two factors. You've got to have inconsistent statements, and you've got to have the first statement relied upon by the court. But beyond that—and this is on pages 750 to 756 of the court's opinion—it's a balance of equities analysis. You look to see if one party derived an unfair advantage. You look to see if the prior position was the product of inadvertence. You look at the broader public interest, including the fact that these were two co-equal sovereigns that were involved in the same case earlier, and you ask, after considering the entire balance of equities, whether judicial estoppel is appropriate. I think what's really wrong about the Fifth Circuit's decision in this case is if you look at Pet Act 9A, it reduced that entire balance to just one factor, which is inadvertence. And then beyond that, compounding that error, it turned inadvertence into just two considerations, knowledge of the facts and potential motive, which is not a totality analysis of even the one factor the Fifth Circuit thought it should consider. Mr. Lu, I guess I'm not sure I understand how what you're saying right now fits with this footnote that you wrote. This is page 24 in your brief, footnote 2, where you say we shouldn't talk about whether inadvertence always precludes judicial estoppel. And I hear you saying now we should talk about that. We should say inadvertence is just one factor. It doesn't always preclude judicial estoppel. Am I wrong about that there's a shift here? I wouldn't say it's a shift in this sense. I think there are two analytical things at issue. One question is what goes on the balance? And we think that is an important question the court should address. What goes on the balance is not just inadvertence, but also unfair advantage, other interests, et cetera. That's all what goes on the balance. I think there is a separate analytical question about how those various factors relate to each other. And what we mean by footnote 2 is this court doesn't need to decide whether one factor, if it exists, is necessarily going to trump the other factors. We think it's enough for this court to basically reiterate what it said in New Hampshire versus Maine, which is the balance of equities isn't just one factor, it's all these factors. The court said it was non-exhaustive. Do you agree with this, that even if you had all the intent in the world, it doesn't necessarily get you judicial estoppel, and conversely, even if there was complete inadvertence, it doesn't necessarily preclude judicial estoppel? That is the government's position. I think that's that second bucket of analysis. The court doesn't need to go that far. I think the court can just say, look, if you're a lower court, you should be looking at all the factors. It may well be that one factor turns out to be dispositive. After you've seen a bunch of cases, maybe you can reach that conclusion. But at this part of the analysis, you should at least have in full view all the relevant factors. And is the idea behind this that everything needs to be filtered through the principal purpose of judicial estoppel, which is protecting the integrity of the courts, and that this question of intentionality may coincide with that principal purpose, but in certain cases may not? Correct. We think certainly when a party has deliberately taken a prior position as opposed to having taken it by inadvertence, it certainly heightens the impression that I think judicial estoppel is trying to avoid. And that impression is the impression that courts are just arbitrarily giving a party whatever it says it wants. But conversely, there may be cases where the first party gets a tremendous advantage, even though it took that position inadvertently, and it doesn't make sense, it just wouldn't be fair to allow that party to obtain a further advantage in the second proceeding. Mr. Lew, I take your point that inadvertence and mistake may not automatically defeat judicial estoppel. But I'm also not sure we need to get into what all the factors are or even talk about a holistic analysis, given, as Justice Thomas pointed out, New Hampshire really could have been an equitable estoppel case. Forget about judicial estoppel. And the bankruptcy context is different. And we have an Erie problem and all these. Why not just simply say the factor of inadvertence and mistake, whatever it means, doesn't mean what the Fifth Circuit said it meant. That is sufficient ground for vacating and remanding. And you have no problem with that? We have no problem with that. We just wanted the Court to be aware, when it's considering the scope of inadvertence, that it may not be the be-all, end-all of the analysis. But you might not necessarily hang everything in the case on whether it's inadvertent or not. We don't even need to take a view on that, it seems to me. Maybe some future case, there will be a reason to make it a bright-line rule. Maybe not, as you say. We don't have to take a position in this case on that, do we? That's right. Really, our submission is you don't need to move the lines you drew in New Hampshire v. Maine an inch. New Hampshire v. Maine said inadvertence may be appropriate to resist application of judicial estoppel if the party's prior position was the product of inadvertence. We're happy with that statement of what the law is. Thank you. We dispute the way inadvertence was defined here. Well, I mean, New Hampshire v. Maine, it's featured prominently because it's the only thing. I wonder if saying anything about it, I mean, it's two sovereign states against each other and the boundaries. I'm not sure that we should try to bring it into play any more than is necessary. I don't really quibble with that at all. I read New Hampshire v. Maine as setting forth pretty high-level principles. I mean, the principles I understand that decision to set forth are the balance of equities matters and the list of equities is kind of non-exhaustive and inadvertence may be one of those factors. I think at that level, there's nothing wrong with taking those principles and articulating them here. I agree, once you get into how those principles cash out, you may not be in a situation where New Hampshire v. Maine really speaks to that. Thank you, counsel. Justice Thomas? Justice Alito? I know I will have the chance to speak to Justice Gorsuch later. But you answered him. I don't know what you think simply saying they were wrong about inadvertence would get us because you came up here and said there were two fundamental errors and I thought in describing the errors, both times you said the court failed to take into account totality of the certain stances. So it wasn't just merely their failure to address inadvertence properly. They failed to do the holistic evaluation of what was the prejudice to the parties from that inadvertence, even if it was deliberate, it could still... You've said all these other things, so I'm not sure... Well, we would certainly be more satisfied with an opinion that went further and said inadvertence is not the only factor. We think that just follows pretty directly from New Hampshire v. Maine. To give one stark example, I mean, New Hampshire v. Maine... But why did you say yes to an opinion that basically brings us back here? Because I can see the Fifth Circuit saying exactly what it said below. If you know you didn't say it, it's intentional, it's not inadvertence. So they've already answered that question. Yeah, so I'm not sure... I don't think they... So this is getting to the error I think this court really needs to correct because it is core to the dispute between the parties, which is... This is the correct definition in our view of inadvertence versus non-inadvertence. We think, in all cases, the relevant question is, did the party deliberately take the prior position? In other words, did the party deliberately choose position X... So does it come down to the Fifth Circuit now coming back to us and saying, he told his attorney, but the attorney didn't sell the court and you're responsible for your attorney's errors? Which is what we usually say. We do think the attorney is responsible. The attorney's conduct does bind the client. And so that's what the Fifth Circuit basically said here, that the attorney knew the attorney didn't say it. So you... We're back to the... Well, here are two errors I think the Fifth Circuit made just as to inadvertence. One is it deemed irrelevant, and this is on Pet Act 13A, any evidence regarding the attorney's knowledge of whether the duty to disclose applied in this case. That is a bucket of relevant evidence, relevant and mainly objective evidence in our view, that the Fifth Circuit didn't consider. And the second error is, even with respect to its analysis of the potential motive that Justice Alito brought up, the Fifth Circuit's analysis was incomplete. I mean, the record suggests many reasons why there was no modification of the plan when this tort claim was ultimately disclosed. The fact is, no matter when you disclosed it, it would have been years before this claim would have become an award of damages. In one word, I'd do a simple opinion that says, you have to look at the totality of the circumstances and you can't reduce it to the three factors that you mentioned alone. That would be my opinion. That's right. And the Fifth Circuit ignored evidence relevant to the knowledge of the duty and ignored evidence pertaining to the potential motive prong that the Fifth Circuit did consider. Thank you. Justice Kagan? Justice Gorsuch? Justice Kavanaugh? Justice O'Brien? Justice Jackson? Thank you, Counsel. Mr. Jay? Mr. Chief Justice, and may it please the Court, the question the Court agreed to decide in this case is not about whether there was a clear inconsistency between the representations, but about whether proof of bad faith is required before judicial estoppel can apply. And the answer should be no. Where the same litigant seeks to win a second victory on grounds that are clearly inconsistent with the grounds on which he won the first victory, that undermines the integrity of the judicial process. And it is not necessary to also prove that, as Mr. Liu just said, that that litigant intended to switch positions all along. I'd like to make basically three basic points, one about precedent, one about practicalities, and one about bankruptcy. The first is that there are multiple cases, not just New Hampshire, also the 19th century cases that New Hampshire addressed. I don't think Petitioner's Rule can explain any of them. One key thing that New Hampshire says is that mistake or inadvertence looks at time one, not time two. And I think there's been a lot of inconsistency with the other side's presentation this morning about whether they look at time one or time two. Second, in practice, as the district court noted, basically every litigant facing judicial estoppel claims his original position was a mistake. Under the other side's rule, just a declaration claiming a lack of legal understanding or that the attorney gave bad advice would be enough for a trial. And third, although we are not urging a special rule for bankruptcy cases, as the other side is, we think that our rule better fits the bankruptcy context anyway. Petitioner's Rule would undermine the full disclosure of assets on which the bankruptcy bargain depends. A doctrine, as Judge Easterbrook puts it, that encourages debtors to be truthful in their bankruptcy filings will assist creditors in the long run. That is why our rule does not deprive creditors of recoveries that they would otherwise be able to get. District courts might well exercise their discretion at the margin in favor of less culpable litigants, but there's no reason to make bad faith a prerequisite. I welcome the Court's questions. Is there any difference between your rule and the Fifth Circuit's rule? Not in practice, certainly not in this case. The one, if I were writing the rule for all circumstances, I would say that the question of benefit, which the Fifth Circuit describes as part of the inadvertence or mistake inquiry, I think New Hampshire would put that earlier in the analysis, in that New Hampshire's core three factors are clear inconsistency, accepted by the tribunal, and getting some benefit that would be inequitable for you to keep. And I think that we would put the financial aspect of the benefit that the litigant gains from the bankruptcy in that bucket instead. I don't think that's an analytical point. I don't think it makes any difference in this case. So we certainly agree with the Fifth Circuit that the question is not whether the litigant himself got bad legal advice or was subjectively aware of the legal duty as opposed to the facts. New Hampshire also considered the detriment to the party before the court in the subsequent litigation. What is the detriment to your client? So in New Hampshire, the court said or. In other words, it said either benefit to the party that took the position or detriment to the adversary. And I think New Hampshire is unusual, and your question to my friend earlier about mutuality gets to this. It's actually unusual for judicial estoppel to come up in the second piece of litigation involving the same parties, precisely because if it's the same party, they're well-positioned to call the person out for switching positions. In the Philadelphia-Wilmington Railroad case that New Hampshire discussed, it's been settled since the 1850s that this is primarily a doctrine about defending the court's integrity, and for that reason, mutuality is not required. How would you respond to Petitioner's argument that this is a windfall for your client? I think it's just the same point, that the way in which court's integrity is preserved through the use of this doctrine is that the litigant against whom the inconsistent representation is being made points it out to the court. And so in that sense, because mutuality isn't required, it is that litigant standing in for the court and pointing out that the court is about to be misled by the common litigant who took the clearly inconsistent position in the prior action. So I understand the windfall point, but I think you might say the same thing about res judicata collateral estoppel, that the system cares more about locking down the first determination and preventing it from being re-litigated rather than saying, well, the correct answer would be to side against the second litigant rather than the first. But it's not really just re-litigation, it's a new person jumping onto the scene. It does seem, in terms of the court's integrity, it does seem a little much that the one person who's getting off is the one whose truck hit the other guy, right? I mean, it's a lot easier to explain why that's a bad result than simply the idea that, oh, there was something else that went on that the court didn't know about and now you're going to change the natural sense of the propriety of the result by saying the one person who we know inflicted harm, according to the allegations, of course, gets off scot-free. I think that's a consequence, Your Honor, of the fact that if this comes up, it comes up at a time when it's too late to reopen the first proceeding. This goes to a question that Justice Sotomayor asked, that one of the elements of judicial estoppel is that the first proceeding has already resulted in some benefit to the common litigant. And so every court of appeals that has applied New Hampshire to the bankruptcy context has agreed with the basic proposition in this case, although I think it's one that Mr. Garr seems to be disagreeing with, that a representation to the bankruptcy court that there is no cause of action is inconsistent with asserting in a subsequent action that there is a cause of action, just like asserting ownership of a piece of property or a different legal interest, asserting that you don't own that property in one action is inconsistent with trying to invoke the ownership right in a second action. Yes, it's inconsistent, but what is the advantage that is gained from that in this situation? So the advantage in a bankruptcy in which the debtor has an incentive to minimize assets is the ability to convince the bankruptcy court that, so this is a Chapter 13 case, taking this as an example, that a Chapter 13 would be just as much in the creditor's interest as a Chapter 7, which is always the... I understand, but the bankruptcy court could convert the proceeding if that information is brought to their attention. The creditor is apparently in this case, for whatever reason, said we don't care. I don't understand what the advantage is that is being apparently at the heart of your concern that judicial integrity is threatened or something in this situation. The advantage that a litigant gets is convincing the bankruptcy court to confirm the Chapter 13 plan... Not a litigant, this litigant. In other words, in these circumstances, because, as others have pointed out, we're talking about a totality of the circumstances, equitable assessment of whether judicial estoppel should be applied. Right. If you want me to talk about the facts of this case, so in this case, at the time that the debtor had the cause of action, the debtor also fell behind on payments and had to submit additional amendments to the... or modifications to the Chapter 13 plan, and the trustee initially objected to the first of those amendments and said, this amended plan doesn't leave unsecured creditors as well off as a Chapter 7. Once the information was brought to their attention, no one sought interest. No one thought the plan should change in any way. So respectfully, that's a distinct point, and I'm happy to address that, because this was brought to the bankruptcy court's attention such as it was, and if you look at page 203, you'll see that the debtors didn't actually disclose any valuation for this claim. They didn't change the sum total of their assets at all. They just listed... they mentioned the claim and said unknown. This, of course, was well into the payment plan. And it's after the new confirmation had been granted. And at that point, I think it's not surprising that creditors who were receiving the stream of payments and weren't really told anything about this cause of action didn't affirmatively seek reopening of the bankruptcy. I guess my question is, is it fair to just assume or presume that by not having this information, an advantage has been obtained such that it makes sense and is equitable to preclude the debtor from accessing or having this asset, which could, in some situations, actually go into the estate and be a part of the entire bankruptcy? It just seems very harsh. I'm happy to answer the question, and just let me note by way of preface that whether there has been an advantage gained, I think, as this is much of my colloquy with Justice Thomas earlier, I think that that's a different question than the one on which the Court granted cert. Well, we certainly didn't grant cert on the bad faith. You said that at your original statement, and I took issue with it. The question the Court granted cert on, you said, was whether proof of that faith is required. If we look at the actual question presented, it's whether the Fifth Circuit's formulation, which is requiring potential motive for disclosure, was correct. Right, but if you look at the last sentence of the question presented, it says that the reason that the Fifth Circuit is wrong is that it doesn't require proof of bad faith, and that is the fundamental submission that we're making to the Court, that inadvertence or mistake, as an exception to the judicial estoppel doctrine, does not connote proof of bad faith. Mr. Jay, if we're talking about protecting the integrity of the courts, I just want to clarify a factual point. Am I correct that the Bankruptcy Court declined to sanction? No party asked for sanctions, Your Honor. The Bankruptcy Court knew because this was brought, you know, let's see, it's my understanding the Bankruptcy Court knew about this because he ultimately did go back to the Bankruptcy Court and make the Court aware. Am I right about that? There's an amended schedule that, as I was saying to Justice Jackson, doesn't disclose the amounts but states that there is a claim, for the first time that there is a claim in the answer to question 33 on the schedule. That's after the confirmation. And maybe this goes to Justice Sotomayor's point and Justice Jackson's point, to your friend on the other side. Why isn't the Bankruptcy, in this context, why wouldn't we expect the Bankruptcy Court to be the one to police this? I think that no one asked the Bankruptcy Court to take any action, and it may well be that, as I was saying to Justice Jackson, that the creditors concluded that this late in the payment plan, it wasn't worth the candle to do so. And the Bankruptcy Court, and this is to the point that Justice Jackson asked my friend about, the Bankruptcy Court may have tools that it can use in bankruptcy, in the sense of denying a discharge or denying access to Chapter 13 and forcing the case to be converted to Chapter 7 or even referring to criminal prosecution. But all of those things go to the bankruptcy itself rather than to the consistency of the representations between the bankruptcy and a subsequent proceeding. If we might zoom out just for a second, judicial estoppel is an off-branch of equitable estoppel. Equitable estoppel requires mutuality. Our judicial estoppel I case had mutuality where a benefit gained by one party did cause a detriment to the other. It could have been an equitable estoppel case. This is where we don't have mutuality. And if judicial estoppel is about protecting the integrity of the courts, I get the concern on the one side that there's perhaps a misrepresentation of the Bankruptcy Court, subject to all the caveats we've discussed. But the courts also have a duty, and they're open to claims of personal injury. And to give your client a windfall would also seem to have some impact, again zooming out, on the integrity of the judicial process and its accessibility. No? I don't think so, Your Honor, any more than issue preclusion does. I understand we have non-mutual issue preclusion, and you alluded to those. But those doctrines are, again, new and riddled with exceptions when it comes to non-mutual collateral estoppel and the like. And it does seem to me like often we don't do it when it's just not fair. And here, how about, again, if we're concerned about the integrity of the judicial process, why is it one consideration that your client would just get a plain old windfall? So the non-mutuality goes at least back to the Philadelphia Wilmington Railroad case in the 1850s, which discussed in New Hampshire, right? So I resist the premise that it is as new as, for example, non-mutual issue preclusion. Okay, I take the point. Right. And the significance that we take from the fact that, as you said, judicial estoppel grows out of equitable estoppel. Equitable estoppel, likewise, doesn't have this type of state of mind requirement. It focuses on the effect. I'm putting aside the state of mind requirement. I put that aside. That's not relevant to my question. But I think that the reason that there is no state of mind requirement for equitable estoppel or judicial estoppel is that both doctrines focus on the effect. Equitable estoppel focuses on the effect to one litigant. Judicial estoppel focuses on the effects on the judicial system. Yes, and my question is one of the effects on the judicial system here is we're closing the courthouse doors to a good claim. And allowing one party who is engaged in tortious conduct to walk away scot-free. The premise of your question, Your Honor, is that it is a good claim. Let's assume. I know you resist that, but let's just assume that. I'm not resisting it for the usual lawyers don't concede anything reasons. I'm resisting it because it's the very premise of judicial estoppel that we don't look past, once the first case is over, we don't look past the accuracy of the representation in the first case. That's the point. The whole point of the representation in the first case, whether it's New Hampshire or this bankruptcy case or any of the other judicial estoppel cases, is the representation that, in this case, I don't have an asset of this nature. Thank you. Right. So I think that Mr. Garr, in his presentation, brought this back to sort of the mantra of a failure to update a form. I do want to resist that characterization because, I mean, again, first the court didn't grant cert on the clear inconsistency point. There's no disagreement in the courts of appeals that where there's a representation that a cause of action doesn't exist, that's inconsistent with asserting it. And in this case, there's no assertion of a factual lack of knowledge. In fact, the facts show that all the facts were known. There's also no dispute about the obligation to disclose. And this gets to a question I think that Justice Alito asked my friend earlier, that where there is a duty to disclose, that failing to make a disclosure is a representation to the courts that there is nothing to disclose. So because those aren't the questions before the court, all I think that the other side is left with is saying that they resist the idea that either the attorney knew of the legal obligation, which in that bankruptcy court is well established, it's been established for at least a decade, or that the attorney failed to give advice on that to the debtor. And tying together all the questions about what you might say in an opinion, we would urge you to say in an opinion that attorneys' representations matter, that a litigant can't escape judicial estoppel by saying, although my attorney made this representation to the court in the first action, that's a mistake because I didn't understand the consequences of the choice that my attorney was making. That's fundamentally inconsistent with the notion of mistake as this court has used it for well over a century. I think this is well fleshed out in the German v. Carlisle McNelly decision that we cite in our papers. But that cites precedent going well back to Justice Story, construing a statute involving mistake or error. Legal mistakes aren't that kind of mistake. And that type of error is not what the judicial estoppel doctrine or the inadvertence or mistake exception to it are getting at. Justice Jackson had the hypothetical in the top half of the argument about the asset being concealed from the divorce. And I think that the point that I wanted to make from that is that how is that example going to come to light? How are these causes of action that are not disclosed in bankruptcy and that if disclosed, the bankruptcy court could make its determination about whether they should have been disclosed sooner and what the consequences should be. How are they going to come to light if there is no incentive to litigate the fact that they didn't come to light sooner? So as the lower courts have recognized that apply our rule, not just the Fifth Circuit but also others. So why do you think incentives have to come from the threat of not allowing you to pursue the claim? I mean, this is a point that many have pointed to or made with respect to all the tools the bankruptcy court has to sanction an intentional omission of that nature. But the tools to sanction all presuppose that someone is going to find out about the concealed claim. And the tools are not useful if the assets don't come to light. Yes, but you need to find out about the concealed claim in order for the claim to be extinguished. I mean, that's a necessary condition for anything to happen. The question is why once we find out about it, the remedy is to say you cannot pursue that claim as opposed to some other solution. I think the reason is the clear inconsistency. This doesn't just come up in the context of the good claim that we're talking about. This comes up in all types of bankruptcy actions in which a party makes a solemn representation to the bankruptcy court about the amount of property that they have, and they subsequently turn around and make representations to another court that are flatly inconsistent with that. I understand, but the equivalent would be that once that happens, somehow the bankruptcy court could divest the person of that property, which is not the answer. The answer is they adjust the bankruptcy proceeding to sanction them appropriately. But that's just it, Justice Jackson. I think that once the plan is confirmed and the debtor gets the discharge, I don't think that my friend on the other side is correct to say that the bankruptcy court always has the option to say, oh, I'm going to take some further action. In Chapter 13 plan, if the creditors have been paid off, and the creditors have been paid off, and Chapter 13 plan is time-limited, the bankruptcy court I think doesn't have the free hand And should that factor in, then, to whether or not judicial estoppel is appropriate? Why couldn't, in the totality of the circumstances, maybe in that situation you would have judicial estoppel? I resist giving a bankruptcy-specific answer, but I'm happy to give an answer for that question. In every judicial estoppel case, rather, the question is what is the benefit that the common litigant between the two actions has gotten from the first action? And if it's raised early enough that the litigant can surrender the benefit, then there isn't going to be judicial estoppel. I think that's just baked right into the doctrine. You don't need a bankruptcy-specific rule to say that, because I think that's part of judicial estoppel. Just like the clarity, how clear the inconsistency between the representations is, also baked into the judicial estoppel doctrine. And when there's doubt about whether, you know, a pro se litigant or something like that has made such a representation, then the existing judicial estoppel doctrine can deal with that. Thank you. Unless the Court has any further questions? Mr. Thomas? Thank you, counsel. Thank you, Ashley. Rebuttal, Mr. Garr? Thank you, Mr. Chief Justice. We would welcome any ruling setting aside the Fifth Circuit rule in this case, but we do think it's important for the Court to say that a holistic analysis should be undertaken into intent, because I do think that it's likely this case will end up right back before this Court, as Justice Sotomayor indicated. And then we would urge the Court to let the lower courts sort out the particular facts and circumstances, in this case under the holistic analysis. As to the question presented, the question presented and the whole petition is directed right at the Fifth Circuit's rule here. There's absolutely nothing that prevents this Court from considering that question, resolving the circuit split, and the Court should do so. Petitioner disclosed his claim with more than a year left on the bankruptcy plan. In this case, the bankruptcy Court could have objected if it thought anything was awry, and any creditor could have come forward and objected if it thought it was entitled to anything more. But no one did. And last, I would just say on the windfall point, no doctrine of equity would allow the tortfeasor in this case to walk away scot-free if the debtor here simply made an honest mistake in failing to update the form. The Fifth Circuit's decision should be reversed and the case remanded. Thank you, counsel. The case is submitted.